UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GREAT AMERICAN LIFE INSURANCE COMPANY,    :    NO. 1:04-CV-00815
                                          :
        Plaintiff,                        :
                                          :
                                          :
    v.                                    :    **OPINION AND ORDER**
                                          :
KATHERINE SHAW WALLACE THOMPSON,          :
                                          :
        Defendant.                        :

        This is before the Court on Defendant's Motion to
Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule
of Civil Procedure 12(b)(2), to Change Venue to the United States
District Court for the Northern District of California under 28
U.S.C. § 1404(a), to Stay Pending Bankruptcy Proceedings pursuant
to 11 U.S.C. § 362, or to Dismiss for Failure to State a Claim by
Defendant Katharine Shaw Wallace Thompson under Federal Rule of
Civil Procedure 12(b)(6) (doc. 9), the Response in Opposition to
Defendant's Motion filed by Plaintiff (doc. 15), and Defendant's
Reply (doc. 19).

**A.  RELEVANT FACTS AND PROCEDURAL BACKGROUND**

        The current action between Defendant and Plaintiff
arose from a judgment debt owed by Morley P. Thompson, Sr.
(hereinafter "Morley") to Plaintiff (doc. 9).  Morley is a non-
party to this suit and married to Defendant, Katherine Shaw Wallace
Thompson (hereinafter "Thompson") (Id.).  In 2004, Plaintiff filed

-1-

a multi-count complaint in Hamilton County Common Pleas Court asserting primary claims of fraudulent transfer and civil conspiracy against Thompson and Morley (Id.). Plaintiff later began pursuing debt judgment against Morley in the Northern District of California (Id.). After Plaintiff voluntarily dismissed its state court suit, Plaintiff filed this action pursuing a single claim against Thompson for civil conspiracy to commit fraudulent transfer (Id.).

Thompson claims to be a lifelong California resident who is seventy-eight years old (Id.). Plaintiff asserts that Thompson purchased her husband's (Morley's) personal property to aid Morley in hiding these asserts from creditors including Plaintiff (doc. 15). Thompson concedes purchasing all of Morley's personal property including everything from the artwork and furniture in Morley's four homes to the clothes off his back between the years 2001 and 2002 (doc. 9).

Specifically, a bill of sale dated May 16, 2001 purports to convey all of Morley's personal property located at four residences in Cincinnati, California, Colorado, and Florida to Defendant (Id.). The same bill of sale dated May 16, 2001 also purports to convey four vehicles, including two Jaguars, to Defendant (Id.). This bill of sale conveyed the property in exchange for $300,000 (Id.). Later, a bill of sale dated October 10, 2001 purported to convey all the paintings, prints, and

-2-

photographs in all four residences to Defendant in exchange for $92,445.03 (<u>Id</u>.). An October 1, 2002 bill of sale purports to convey all personal property located at Morley's Cincinnati office to Thompson in exchange for $42,500 (<u>Id</u>.). Finally, Morley transferred interest in a California residence to Thompson on April 26, 2001 for consideration (<u>Id</u>.). Great American Life Insurance Company (hereinafter "GALIC") did not file suit against Morley until early 2004 after Morley conveyed the previous property to Thompson (<u>Id</u>.). However, at the time of the bills of sale, Morley had incurred over $5 Million in debt to Plaintiff (doc. 15).

GALIC now asserts claims against Thompson for civil conspiracy to make fraudulent conveyances claiming Thompson helped Morley hide assets to avoid Plaintiff's judgment against him (doc. 9). Thompson responded by filing a Motion to Dismiss for a Lack of Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the Alternative to Transfer Under 28 U.S.C. § 1404(a), to Stay Under 11 U.S.C. § 362, or to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6).

**B. APPLICABLE LAW**

A court may determine its jurisdiction on the basis of written materials, when a defendant files a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2). <u>Mimco Inc. v. Virginia Iron & Metal Recycling, Inc.</u>, 840 F. Supp. 1171, 1173

-3-

(S.D. Ohio 1993) ("plaintiff need only demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.")  The Sixth Circuit, in <u>Bird v. Parsons</u>, 289 F.3d 865 (6th Cir. 2002), has noted that a district court may not "consider facts proffered by the defendant that conflict with those offered by the plaintiff, and will construe the facts in a light most favorable to the nonmoving party." <u>Id</u>. at 871.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) requires the Court to determine whether a cognizable claim has been pleaded in the complaint.  The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Westlake v. Lucas</u>, 537 F.2d 857, 858 (6th Cir. 1976).  In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).  A court examines a complaint in light of the objectives of Rule 8 using the standard articulated in <u>Jones v. Sherrill</u>, 827 F.2d 1102, 1103 (6th Cir. 1987):

> In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. <u>Windsor v. The Tennessean</u>, 719 F.2d 155, 158 (6th Cir. 1983), <u>cert. denied</u>, 469 U.S. 826 (1984).  The

> motion to dismiss must be denied unless it appears beyond
> doubt that the plaintiff can prove no set of facts in
> support of the claim which would entitle her to relief.
> Id. at 158; Conley v. Gibson, 355 U.S. 41 (1957).

Jones, 824 F.2d at 1103.

The admonishment to construe the plaintiff's claim liberally
when evaluating a motion to dismiss does not relieve a plaintiff of
his obligation to satisfy federal notice pleading requirements and
allege more than bare assertions of legal conclusions.  Wright,
Miller & Cooper, Federal Practice and Procedure: § 1357 at 596
(1969).  "In practice, a complaint . . . must contain either direct
or inferential allegations respecting all of the material elements
[in order] to sustain a recovery under some viable legal theory."
Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir.
1984), quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627,
641 (5th Cir. 1981); see also Sutliffe, Inc. v. Donovan Companies,
Inc., 727 F.2d 648, 654 (7th Cir. 1984); Wright, Miller & Cooper,
Federal Practice and Procedure, § 1216 at 121-23 (1969).  The
United States Court of Appeals for the Sixth Circuit clarified the
threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high
> standard; we recognize the policies behind Rule 8 and the
> concept of notice pleading.  A plaintiff will not be
> thrown out of court for failing to plead facts in support
> of every arcane element of his claim.  But when a
> complaint omits facts that, if they existed, would
> clearly dominate the case, it seems fair to assume that
> those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th

Cir. 1988).

## C.  DEFENDANT'S CLAIM THAT COURT LACKS PERSONAL JURISDICTION

In order to satisfy personal jurisdiction requirements, two prongs must be satisfied (doc. 9).  The first prong requires that Ohio's "long-arm" statute permits jurisdiction (Id.).  Secondly, it must be shown that if this Court exercised jurisdiction it would not deprive a party of their due process rights guaranteed by the Fourteenth Amendment to the United States Constitution (Id.).

Ohio's long-arm statute, according to O.R.C. § 2307.382(A), permits parties to exercise personal jurisdiction over persons acting directly or by agents, as to a cause of action arising from the person's:

> (1) transacting any business in the state;
>
> (3) causing tortious injury by an act or omission in this state
>
> (6) causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

Plaintiff contends that Defendant's actions satisfy each of the above (doc. 15).

The constitutional analysis differs depending on whether the Court is seeking to exercise specific or general jurisdiction. Conti v. Pneumatic Prods. Corp., 977 F.2d 978, 981 (6th Cir. 1992).  In the case of specific jurisdiction, the Sixth

-6-

Circuit has established a three-part test for determining whether, consistent with due process, a court may exercise jurisdiction:

> (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Youn v. Track, Inc., 324 F.3d 409, 418 (6th Cir. 2003). General jurisdiction exists when the defendant's contacts with the forum state are "substantial" and "continuous and systematic," allowing the state to exercise personal jurisdiction over the defendant even when the actions do not relate to the defendant's contact with the state." Id. at 417-18. When considering whether personal jurisdiction exists, the Court will consider the facts and evidence in the light most favorable to the plaintiff and cannot consider facts proffered by the defendant that conflict with any offered by the plaintiff. Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002).

Defendant argues that the requirements for personal jurisdiction requirements, according to both Ohio's long-arm statute and due process, are not met (doc. 9). Specifically, under Ohio's long-arm statute, Defendant argues that she has not conducted any business in Ohio pursuant to O.R.C. § 230.382(A)(1) (doc. 9). Defendant contends that the three bills of sale stretching over a period of eighteen months are isolated and have no commercial effect in Ohio such that the transactions were "one

shot deal[s] between two private individuals" (<u>Id</u>. <u>citing</u> <u>Nationwide Mut. Ins. Co. v. Baker</u>, 105 Ohio App. 3d 336, 340 (Ohio 1995)). Instead, Thompson argues these transactions are so "random" and "attenuated" that she never intended to take advantage of the privileges and benefits of conducting business in Ohio. (<u>Id</u>.).

Plaintiff responds that Thompson did transact business in Ohio by visiting Ohio to remove property from the state along with sending money to consummate the purchases (doc. 15). Specifically, Plaintiff argues that the three separate transactions do not amount to "one shot deal[s] between two private individuals" (<u>Id</u>.). Plaintiff reaches this conclusion since three deals were involved, not just one transaction, and these deals occurred over a period of approximately eighteen months (<u>Id</u>.). The Court agrees with Plaintiff finding that three separate purchases requiring three separate payments and a trip to Ohio to remove property does equate to transacting business in the state. Defendant's claim of a "one shot deal" is not well-taken in this context since three separate transactions occurred in a span of eighteen months. Additionally, the number of transactions suggests the contacts were not "random" and "attenuated". Therefore, the jurisdictional requirements of Ohio's long-arm statute, pursuant to O.R.C. § 230.382(A)(1) are met.

Next, Thompson claims that Ohio's long-arm statute

-8-

does not confer jurisdiction since she did not cause "tortious injury by an act or omission" in Ohio (doc. 9).  Thompson states that merely purchasing property located in Ohio, via three separate transactions while still living in California, does not equate to committing a tort despite her transporting this property to California (Id.).  Thus, according to Thompson, Ohio's long-arm statute does not confer jurisdiction since the bills of sale were executed outside Ohio (Id.)

Plaintiff responds by alleging that Thompson committed civil conspiracy along with her husband to fraudulently transfer his personal property (doc. 15).  This was accomplished, asserts Plaintiff, by placing the property out of the reach of Morley's creditors via the transfer of ownership to Thompson and the actual re-location of the property to California (doc. 15). Plaintiff correctly argues that Thompson's physical actions of traveling to Ohio to remove the property to California amounts to furthering a conspiracy and confers jurisdiction to the State regardless of whether the removal of the property was completed (Id. citing Perry v. Kempton, 864 F. Supp. 37, 39 (S.D. Ohio 1994)).  Thompson's response that she retrieved property during social visits is irrelevant since the actions occurred in Ohio - the purpose of the visit is not pertinent (Id.).  This Court agrees with Plaintiff, finding the transaction may have caused tortious injury by fraudulent transfer and thus this Court has jurisdiction

-9-

pursuant to O.R.C. § 2307.382(A)(3).

Finally, Thompson argues that Ohio's long-arm statute, specifically O.R.C. § 2307.382(A)(6), does not apply because her purchase of miscellaneous personal property of insignificant commercial value was not intended to cause injury to Plaintiff (doc. 9). Specifically, she argues that it was not reasonable for her to foresee the multi-million dollar judgments against her husband including the judgment involving Plaintiff (Id.). She continually cites that fact that the three bills of sale, involving property in three different states, were executed prior to the commencement of Plaintiff's action against her husband (Id.).

Plaintiff responds by simply pointing out that Thompson purchased property after her husband incurred over $5.8 million in debt to Plaintiff (doc. 15). Plaintiff then asserts that Thompson was aware of her husband's debt problems and, thus, must have known that transferring her husband's property would harm his creditors (Id.). The Court agrees with Plaintiff and finds that Thompson's access to her husband's current financial position led to the purchase of his personal property and that she should have known or did know this activity would harm her husband's creditors. Thus, the Court finds that Ohio's long-arm statute, pursuant to O.R.C. § 2307.382(A)(1), (3), and (6), confers jurisdiction over Defendant to the State of Ohio. The next issue

-10-

is whether the due process requirements provide this Court with jurisdiction.

First, Thompson asserts that the State of Ohio lacks general jurisdiction over her since she never lived, worked, or held any interest in the property located at Morley's former Ohio address (doc. 9).  She claims she has resided in California for her entire life and only had ties to Ohio incidental to her marriage (Id.).  These incidental contacts include having her mail delivered to her husband's Cincinnati address and ordering flowers to a friend living in Cincinnati (Id.).

Plaintiff responds by citing the following evidence: Thompson represented to the California Franchise Tax Board that she became an Ohio resident on December 31, 1999; she asserted on her 1999 tax returns that she resided in Cincinnati; and she claimed she lived in Cincinnati to the Ohio Bureau of Motor Vehicles (doc. 15).  This evidence, according to Plaintiff, amounts to "systematic and continuous" contacts in Ohio necessary for jurisdiction (Id.).  In addition to the previous contacts discussed, Plaintiff also claims Thompson borrowed money from an Ohio trust (Id.).

Thompson counters by arguing that these contacts were all related to her marriage and that her husband's accountants filed their tax returns listing the address in Cincinnati without her input and that these tax returns represent Defendant's income earned only in California not Ohio (doc. 19).  However, since the evidence

-11-

must be viewed in favor of the Plaintiff, the Court finds the evidence supports a conclusion that Defendant engaged in "continuous" and "systematic" contacts with the state – namely, her tax dealings in California and Ohio, representations to the Ohio Bureau of Motor Vehicles, and borrowing money from an Ohio trust (doc. 15).   Additionally, Thompson's claim that these events occurred too far into the past and specifically that she is a California resident are irrelevant since merely moving or living in a different state does not prevent a state from exercising general jurisdiction (Id. citing Clark v. Connor, 82 Ohio St. 3d 309, 313 (Ohio 1998).

Secondly, Defendant asserts a lack of specific jurisdiction because she did not avail herself of the privilege of acting in Ohio (doc. 15).   However, Plaintiff's allegations arise from activities by her in Ohio and her actions create a substantial connection with Ohio such that exercising jurisdiction would be reasonable (doc. 9).   Thompson claims that she did not avail herself of the privilege of acting in Ohio, through the purchase of Morley's property scattered over four different states, such that she would reasonably anticipate being haled into court (Id. citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).   She supports this assertion by claiming that all the negotiations regarding the bills of sale occurred in California and the sales occurred prior to the judgment debts against her husband  (Id.).

-12-

Thus, according to Thompson, random purchases of personal property from her husband and social visits to Cincinnati do not merit exercising specific jurisdiction (<u>Id</u>.).

   Plaintiff responds, and the Court agrees, that these transactions were not random but that Thompson did purposefully avail herself of the privilege of acting in Ohio when she purchased and removed her husband's property (doc. 15). She could reasonably anticipate being haled into Ohio court regarding those transactions, especially considering the amount of her husband's debt at the time of the transactions and the high probability of her awareness of this debt (<u>Id</u>. <u>citing</u> <u>Perry</u>, 864 F. Supp. at 39 (S.D. Ohio 1994)).

   Thompson's response that the transactions involved other states and that she attended social gatherings during her visits are irrelevant since the "purposeful availment" determination requires examining her contacts with Ohio and not necessarily contacts with other states like Florida, Colorado, and California (doc. 15). Additionally, merely mixing one's social gatherings with her commercial transactions does not prohibit a state from exercising jurisdiction over an individual (<u>Id</u>.).

   Thompson argues that Plaintiff's allegations do not arise from any activities by Plaintiff in Ohio (doc. 9). Instead, she claims that the negotiations for the bills of sale occurred in California and that merely removing personal property during social visits to Cincinnati is not an activity giving rise to this action

-13-

(Id.). Plaintiff counters arguing that Thompson's choice to fraudulently transfer all of her husband's personal property in Ohio along with her subsequent removal of that property from Ohio clearly arises from activities in Ohio (doc. 15). The Court agrees with Plaintiff finding that the transfer of the property from Ohio and its subsequent removal amounts to activities arising in Ohio even if the negotiations occurred in California (Id.). Defendant responds that the removal of property from Ohio to California is irrelevant and that the small contacts created from the bills of sale do not meet the first prong necessary to establish specific jurisdiction (Id.). However, the first prong only requires examining whether any activities occurred in Ohio and surely the sale and subsequent removal of property from Ohio involves enough activity to satisfy this prong (Id.).

Finally, Thompson argues that her actions did not create a substantial connection with Ohio such that the exercise of jurisdiction would be reasonable (doc. 9). She specifically states that a substantial connection does not exist since the sale negotiations occurred in California and involved property located in four different states (Id.). She also contends that exercising jurisdiction would not be reasonable, even if the necessary requirements were satisfied, considering that she is seventy-eight years old, has health problems including a torn Achilles tendon, and is not a corporation but instead a sole individual (Id.).

-14-

Additionally, Thompson cites the large litigation costs that would ensue if she were required to travel (Id.). Plaintiff has much more capability to prosecute a case in California, argues Defendant, and California has an interest in resolving a case between a California resident and corporation licensed to do business in California as much as Ohio does (Id.). Plaintiff responds by reminding the Court that once a court finds the first two elements of purposeful availment and a cause of action present, an inference arises that the third factor of substantial connection is present (doc. 15 citing CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1268 (6th Cir. 1996)). Plaintiff states that a substantial connection exists through Thompson's fraudulent transfer of property via the purchase and physical removal of said property from Ohio to California (Id.). Plaintiff also notes that Defendant has hired counsel in Ohio capable of handling pre-trial matters; so the only time Thompson would need to travel to Ohio would be for trial, if she decided to do so (doc. 15). Furthermore, Thompson admitted to making social visits to Ohio (Id.). Considering the above alleged facts, this Court finds that a substantial connection exists through Thompson's actions in Ohio specifically regarding the transfer of property and its physical removal to California. This Court also finds that the exercise of jurisdiction is reasonable when considering that Thompson travels to Ohio for social visits.

In summary, this Court may exercise personal jurisdiction over Thompson since her purchase of property located in Ohio and subsequent removal of that property satisfies the requirements pursuant to Ohio's long-arm statute and due process.

**D.  DEFENDANT'S REQUEST FOR TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

A motion to transfer under 28 U.S.C. § 1404(a) requires balancing the following factors: (1) the private interest of the litigants; (2) the convenience to the witnesses; (3) the location of the operative facts; (4) the location of documentary evidence; (5) the possibility of prejudice in either the forum or transfer state; and (6) the public's interest. United States ex rel. Grand v. Northop Corp., 811 F. Supp. 330, 332 (S.D. Ohio 1992) The balance must be strongly in favor of the defendant since the plaintiff's choice of forum should rarely be disturbed. Id.

Thompson reminds this Court that even in cases where jurisdiction and venue are proper, "a court may entertain a motion to transfer if there exists a better forum for the resolution of the dispute between the parties" (doc. 9 citing SKY Tech. Partners v. Midwest Research Inst., 125 F. Supp. 2d 286, Thompson cites the following evidence to claim that Northern California is a more appropriate and convenient forum: she resides in California, she is registered to do business in California; Plaintiff is currently litigating against her husband in California; the claims are based on wrongdoing regarding property mostly located in Northern

-16-

California; and central witnesses to the case are located in California (doc. 9).

Plaintiff argues the case should not be transferred (doc. 15). First, Plaintiff argues that if this matter is transferred they will simply suffer equal if not greater inconvenience (<u>Id</u>.). In addition, Plaintiff notes that Defendant has retained counsel in this case and travels to Cincinnati for social visits (<u>Id</u>.). Second, Plaintiff discusses the convenience of witnesses and argues that two of their primary witnesses, Morley's personal assistant and Thompson's step-son, are located in Cincinnati (<u>Id</u>.). Thompson fails to make any mention that witnesses will refuse to attend trial in this Court (<u>Id</u>. and doc. 19). It appears more likely, according to Plaintiff, that Morley's personal assistant who will likely be hostile to Plaintiff will be unwilling to travel to California (<u>Id</u>.). Third, Plaintiff argues that the location of the operative facts are largely in Ohio where property was sold and physically removed (<u>Id</u>.). Plaintiff contends the fourth factor, the location of documentary evidence, supports not transferring to California since the databases relating to the bills of sale, original receipts, and other information are just as accessible in either forum (<u>Id</u>.) The Plaintiff claims the fifth factor, the possibility of prejudice in either the forum or transfer state, favors neither forum (<u>Id</u>.). Plaintiff is not currently litigating against Thompson's husband in California but instead the

-17-

California lawsuits are stayed since Morley declared bankruptcy (Id.). Finally, Plaintiff argues that the remaining factor, public interest, supports not transferring this action since Plaintiff is an Ohio corporation (Id.). Furthermore, evidence illustrates that the Northern District of California is more congested when compared to this Court resulting in approximately five more months for a case to go to trial (Id.).

This Court agrees with Plaintiff. Thompson's ability to travel to Ohio for social visits will permit the Defendant to travel to Ohio for trial. Additionally, she has not demonstrated based on the factors regarding private interest, location of witnesses such as Morley's personal assistant, documents including bills of sale, location of operative facts, possibility of prejudice, and the public's interest that support transferring this suit pursuant to 28 U.S.C. § 1404(a). The inconvenience Thompson may suffer by litigating in Cincinnati does not strongly outweigh the inconvenience to Plaintiff, if forced to litigate in Northern California.

**E.  DEFENDANT'S MOTION FOR AN AUTOMATIC STAY PURSUANT TO THE BANKRUPTCY CODE**

The automatic stay provision dealing with bankruptcy proceedings pursuant to 11 U.S.C. § 362 provides a stay of:

> (1) the commencement or continuation of a judicial action or proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy case, or to recover a claim against the debtor that arose before the commencement of the

-18-

bankruptcy case;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the bankruptcy case;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the bankruptcy case;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the bankruptcy case;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the bankruptcy case against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

Defendant argues that this action should be stayed according to "case law" providing that creditors are stayed under Section 362 from pursuing actions to recover for fraudulent transfers not only against the debtor but also against the non-debtor transferee (doc. 9 citing In the Matter of Fletcher, 176 B.R. 445, 452 (Bankr. W.D. Mich. 1995). Thompson claims that permitting creditors to evade the automatic stay provision by suing non-debtor transferees would undermine the Bankruptcy Code (Id. citing N.L.R.B. v. Martin Arsham Sewing Co., 873 F.2d 884, 888 (6th Cir. 1989).

First, Thompson argues that Ohio law does not permit Plaintiff to pursue a claim of civil conspiracy to commit fraudulent conveyance since Plaintiff cannot pursue a claim of fraudulent conveyance directly. (Id. citing Bowshier v. Chrysler Financial Corp., 144 F. Supp. 2d 919, 934 (S.D. Ohio 2001). Thompson also contends Ohio law does not permit Plaintiff to pursue a claim against her since Morley is an indispensable party to this action. (Id. citing Dolce v. Lawrence, No. 96-L-129, 1997 WL 286154, at *4 (Ohio App. 11th Dist. 1997).

Second, Thompson argues that the Bankruptcy Code requires a stay of this case. (Id. citing Martin Arsham Sewing Co., 873 F.2d at 887). Avoidance actions in bankruptcy are for the benefit of all estate creditors; thus, the trustee acts as the estate's sole representative in filing or continuing such actions in the bankruptcy or state court. (Id. citing In the Matter of Fletcher, 176 B.R. at 452.). Thompson contends that Plaintiff is required to pursue the value of the transferred assets in bankruptcy court along with Morley's other creditors and are not, as Plaintiff maintains, able to pursue the conveyances pursuant to the Ohio Uniform Fraudulent Transfer Act ("UFTA") (Id. citing Maritin Asham Sewing Co., 873 F.2d at 886). Thus, according to Thompson, as long as her husband's bankruptcy proceedings are pending, standing to pursue a conspiracy to commit a fraudulent transfer claim lies solely with Morley's bankruptcy trustee (Id. citing In the Matter

-20-

of Fletcher, 176 B.R. at 446.).

        Plaintiff responds by asserting that the Bankruptcy Code's automatic stay provision does not protect non-debtor parties who may be subjected to litigation for transactions involving the debtor (doc. 15 citing In re Kmart Corp., 285 B.R. 679, 689 (N.D. Ill. 2002)). Specifically, Sections (a)(1) and (a)(6) do not apply because Plaintiff is pursuing a claim against a non-debtor (Id.). Additionally, Sections (a)(2) and (a)(3) do not apply because Plaintiff seeks to collect damages directly from Thompson regarding her conduct independent of Morley's conduct (Id.). Damages caused by the Defendant are not property of Morley's estate (Id.). Sections (a)(4) and (a)(5) do not apply because Plaintiff is not creating, perfecting, or enforcing any lien against property of Morley's estate (Id.). Section (a)(7) does not apply because Plaintiff is not seeking to set off any debt owed by Morley but instead seeking damages caused by Thompson (Id.). Finally, Section (a)(8) dealing with the United States Tax Court is irrelevant to this matter.

        Third, as mentioned earlier, Plaintiff contends that its civil conspiracy claim is not property of Morley's estate (Id.). Plaintiff also contends that Thompson's assertion that only the bankruptcy estate can bring the action is wrong as a matter of law (Id. citing In re Central Heating & Air Conditioning, Inc., 64 B.R. 733, 736 (N.D. Ohio 1986). While normally, only a debtor may bring

claims against third parties that independently belong to him under the controlling substantive law, an exception exists providing the creditor the power to bring certain avoidance actions (Id.). Accordingly, because creditor's fraudulent conveyance claim against a third party is based upon the theory of a continued property interest by debtor, that claim is owned by debtor and part of the debtor's estate (Id.). Allegations that a third party aided a debtor corporation's fraudulent transfers are insufficient to give a bankruptcy trustee standing to sue on behalf of the allegedly defrauded creditors (Id. citing In re D.H. Overmyer Telecasting Co., 56 B.R. 657, 659 (N.D. Ohio 1986). Additionally, a bankruptcy trustee cannot assert the claims of creditors against a third party who allegedly conspired with the debtor to fraudulently transfer his assets (Id. citing Friedman v. Myers, 20 Ohio Cir. Dec. 303 (Ohio Cir. Ct. 1907)). According to Plaintiff, not all members of a civil conspiracy must be named as defendants or joined as defendants, meaning that Morley is not a necessary party. (Id. citing 15A C.J.S. Conspiracy § 27.).

Defendant responds to Plaintiff's assertion citing the same rule of law and rationale in its original brief (doc. 19). This Court agrees with Plaintiff finding the action is not stayed by the Bankruptcy Code and consequently that Plaintiff may seek damages from Defendant regarding Defendant's conduct (Id.). Similar to asbestos liability litigation previously considered by this

-22-

Court, defendants who file bankruptcy will not be permitted to use the "automatic stay provision of the Bankruptcy Code.... as a sword." <u>Lynch v. Johns-Manville Sales Corp.</u>, 23 B.R. 750, 752 (S.D. Ohio 1982). "The Bankruptcy Code is designed to facilitate the rehabilitation of debtors." (Id.). Accordingly, this Court upholds its belief that Congress did not intend to place these obstacles in the paths of plaintiffs seeking redress against third parties and subsequently refuses to find that the Bankruptcy Code stays these proceedings.

**F.  DEFENDANT'S MOTION PURSUANT TO RULE 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of an action for failure to state a claim upon which relief can be granted (doc. 9). Civil conspiracy is a "malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages" (<u>Id</u>. <u>citing</u> <u>Kenty v. Transamerica Premium Ins. Co.</u>, 650 N.E.2d 863, 866 (Ohio 1995)). A plaintiff may not bring a claim for conspiracy unless he can also state a claim for the underlying cause of action (<u>Id</u>. <u>citing</u> <u>Bowshier v. Chrysler Financial Corp.</u>, 144 F. Supp. 2d 919 (S.D. Ohio 2001)). An underlying tort is necessary to give rise to a cause of action for conspiracy. (<u>Id</u>. <u>citing</u> <u>Stiles v. Chrysler Motors Corp.</u>, 624 N.E.2d 238, 244 (Ohio App. 6th Dist. 1993)).

Defendant argues that no underlying cause of action

exists since Plaintiff only claims civil conspiracy (Id.). Plaintiff cites Williams v. Aetna Fin. Co. to argue that the tort of civil conspiracy is a stand alone tort (doc. 15 citing Williams v. Aetna Fin. Co., 83 Ohio St. 3d 464 (Ohio 1998)). Plaintiff argues that in Aetna the Supreme Court affirmed a verdict for civil conspiracy even when the plaintiff did not state a separate claim for an underlying unlawful act. (Id.). However, in Aetna, plaintiff claimed violations of the Ohio Consumer Sales Practices Act, Ohio Home Solicitation Sales Act, breach of contract, and civil conspiracy. Aetna, 83 Ohio St. 3d at 467. Additionally, the Supreme Court of Ohio affirmed the trial court's finding that defendant's employees "affirmatively committed fraud by the very acts of making the loans" to plaintiff. Id. at 476. Thus, an underlying cause of action was brought by the plaintiffs. (Id.).

Under these facts, Plaintiff did assert claims of fraudulent transfer and civil conspiracy against Morley and Defendant in their original suit filed in Hamilton County Common Pleas Court (doc. 9). Upon Morley's filing of a voluntary bankruptcy petition in the Northern District of California, Plaintiff voluntarily dismissed its state court suit deciding to pursue its case against Morley in California (Id.). Plaintiff now seeks to claim civil conspiracy against Defendant in the Southern District of Ohio (Id.). The underlying cause of action, fraudulent transfer, is certainly relevant as illustrated by Plaintiff's

-24-

initial suit in state court that included fraudulent transfer (Id.).

A claim for civil conspiracy requires only that an underlying tort can be stated, not that it actually be pleaded in a plaintiff's complaint along with the claim for civil conspiracy. An underlying cause of action, fraudulent transfer, was initially brought against both parties in state court (Id.). Thus, this Court finds that an underlying cause of action exists through fraudulent transfer. Plaintiff has chosen not to make such a claim in its Complaint. Plaintiff will bear the burden of ultimately proving the underlying tort. Accordingly, Plaintiff may proceed with its claim of civil conspiracy.

## G. CONCLUSION

For the foregoing reasons, this Court DENIES Defendant's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(2), Issue a Stay According to 11 U.S.C. § 362, and Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6), and to Transfer this Action to the Northern District of California under 28 U.S.C. § 1404(a).


SO ORDERED.


Dated: August 4, 2005        s/S. Arthur Spiegel

                             S. Arthur Spiegel
                             United States Senior District Judge

-25-