```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

GREAT AMERICAN LIFE        :   NO. 1:04-CV-00815
INSURANCE COMPANY,         :
                           :
    Plaintiff,             :   **OPINION AND ORDER**
                           :
  v.                       :
                           :
KATHERINE SHAW WALLACE     :
THOMPSON,                  :
                           :
    Defendant.             :

This matter is before the Court on Defendant Katharine Shaw Wallace Thompson's Motion for Reconsideration or, Alternatively, to Certify Issue for Interlocutory Appeal or Immediate Review (doc. 32), Plaintiff Great American Life Insurance Company's Opposition to Defendant's Motion (doc. 34), and Defendant's Reply Memorandum in Support of her Motion (doc. 35). Also before the Court is Defendant's Unopposed Motion to Extend Discovery Deadline (doc. 37).

**I.  Facts**

The instant case stems from a judgment debt owed by Morley P. Thompson ("Mr. Thompson"), husband of Defendant Katherine Shaw Wallace Thompson ("Mrs. Thompson"), to Plaintiff Great American Life Insurance Company ("GALIC") (doc. 31). After several unsuccessful attempts to collect its debt, Plaintiff filed a multi-count complaint in Hamilton County Common Pleas Court

asserting claims of fraudulent transfer and civil conspiracy against Mr. and Mrs. Thompson (Id.). Plaintiff also began pursuing its judgment debt against Mr. Thompson in the Northern District of California (Id.). When Mr. Thompson later filed for bankruptcy, Plaintiff voluntarily dismissed its state court suit and filed this action to pursue a single claim against Mrs. Thompson for civil conspiracy to commit a fraudulent transfer (docs. 31, 32).

The discovery cutoff in the instant case was set for January 1, 2006 (docs. 22, 34). On May 11, 2005, Plaintiff served several interrogatories and document requests upon Defendant (doc. 34). Defendant failed to respond to discovery while several motions were pending (Id.). First, Defendant's counsel filed a motion to withdraw shortly after the discovery requests were served (doc. 24). No discovery was procured during the pendency of the motion, which was ultimately withdrawn by Defendant's counsel two months later (docs. 28, 34). A motion to stay discovery was filed two days later (doc. 28) and this Court denied the motion on August 10, 2005 (doc. 33).

Second, Defendant previously filed a Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2), to Change Venue to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a), to Stay Pending Bankruptcy Proceedings pursuant to 11 U.S.C. § 362, or to Dismiss for Failure to State a Claim under Fed. R. Civ. P.

asserting claims of fraudulent transfer and civil conspiracy against Mr. and Mrs. Thompson (Id.). Plaintiff also began pursuing its judgment debt against Mr. Thompson in the Northern District of California (Id.). When Mr. Thompson later filed for bankruptcy, Plaintiff voluntarily dismissed its state court suit and filed this action to pursue a single claim against Mrs. Thompson for civil conspiracy to commit a fraudulent transfer (docs. 31, 32).

The discovery cutoff in the instant case was set for January 1, 2006 (docs. 22, 34). On May 11, 2005, Plaintiff served several interrogatories and document requests upon Defendant (doc. 34). Defendant failed to respond to discovery while several motions were pending (Id.). First, Defendant's counsel filed a motion to withdraw shortly after the discovery requests were served (doc. 24). No discovery was procured during the pendency of the motion, which was ultimately withdrawn by Defendant's counsel two months later (docs. 28, 34). A motion to stay discovery was filed two days later (doc. 28) and this Court denied the motion on August 10, 2005 (doc. 33).

Second, Defendant previously filed a Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2), to Change Venue to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a), to Stay Pending Bankruptcy Proceedings pursuant to 11 U.S.C. § 362, or to Dismiss for Failure to State a Claim under Fed. R. Civ. P.

12(b)(6) (doc. 9).   This Court denied the motion in an Opinion and Order dated August 4, 2005 (doc. 31).

Defendant now asks this Court to reconsider its denial of her motion to dismiss or to certify issues for interlocutory appeal or immediate review (doc. 32). According to Defendant, this Court's denial is inconsistent with its legal holding that Ohio law requires a plaintiff in a civil conspiracy action to be able to state a claim for the tort underlying the conspiracy (Id.).   Defendant asserts that Mr. Thompson is a necessary and indispensable party to the fraudulent transfer underlying the conspiracy in this case, but cannot be joined as a party because of his insolvency (Id.).   Accordingly, Defendant claims that Plaintiff cannot state a claim for fraudulent transfer (Id.).

Plaintiff contends there is no basis to either reconsider, grant interlocutory appeal, or certify a question to the Ohio Supreme Court because the legal issue in question was addressed in Williams v. Aetna Finance Co. (1998), 83 Ohio St. 3d 464, 700 N.E.2d 859 (doc. 34).  According to Plaintiff, the decision in Aetna indicates that a civil conspiracy claim is not dependent on the successful prosecution of separate claim for the underlying unlawful act (Id.).   Plaintiff further asserts that Defendant's motion for reconsideration is merely the latest attempt over the past several months to avoid responding to discovery

3

requests that, if properly answered, would enable Plaintiff to prove the underlying fraudulent transfer (Id.).

**II. Analysis**

Under Ohio law, the tort of civil conspiracy requires "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." Aetna, 83 Ohio St. 3d at 475, 700 N.E.2d at 868 (citing Kenty v. Transamerica Premium Ins. Co. (1995), 72 Ohio St. 3d 415, 419, 650 N.E.2d 863, 866). The Ohio Supreme Court has acknowledged that an underlying unlawful act is also required before a civil conspiracy claim can succeed. Id. Hence, in the Court's previous order denying Defendant's motion to dismiss, this Court stated: "A claim for civil conspiracy requires only that an underlying tort can be stated, not that it actually be pleaded in a plaintiff's complaint along with the claim for civil conspiracy" (doc. 31).

Defendant asserts that Plaintiff cannot "state" a viable claim for the underlying tort in this case (doc. 32). More specifically, Defendant asserts that Plaintiff cannot state a claim for fraudulent transfer because the alleged transferor, Mr. Thompson, could not be joined as a party in such an action due to his insolvency (Id.). The Court finds that such an interpretation misconstrues our previous holding and the "underlying tort" requirement for civil conspiracy in Ohio.

First of all, nowhere in Aetna does the Ohio Supreme Court state that the tort underlying a civil conspiracy claim be successfully prosecuted.  The Court merely states that "[A]n underlying unlawful act is required."  83 Ohio St. 3d at 475, 700 N.E.2d at 868.  To support this statement the Court cites to Minarik v. Nagy (1963), 8 Ohio App. 2d 194, 193 N.E.2d 280 and Godsen v. Louis (1996), 116 Ohio App. 3d 195, 687 N.E.2d 481, both of which discuss the requirements for civil conspiracy in detail.  According to the court in Minarik, "[t]he *damage* is the gist of the action. . . When the mischief is accomplished, the conspiracy becomes important."  8 Ohio App. 2d at 195, 193 N.E.2d at 281 (emphasis in the original).  The court in Godsen likewise noted that "the conspiracy becomes important only after the wrong is committed."  8 Ohio App. 3d at 221, 687 N.E.2d at 497.

Thus, the requirement that a plaintiff be able to state a claim for the tort underlying a civil conspiracy action stems from the notion that there must be "mischief" accomplished or a "wrong" committed.  In the instant case, Plaintiff initially brought a claim for fraudulent transfer and civil conspiracy against Defendant and her husband in state court (doc. 31).  The fact that Plaintiff could not successfully prosecute the claims once Mr. Thompson filed for bankruptcy does not necessarily mean that the alleged acts by Mr. and Mrs. Thompson were lawful. Plaintiff voluntarily dismissed the initial suit and filed this

5

action to pursue a single claim against Defendant (Id.). Plaintiff has asserted that Defendant purchased her husband's personal property to aid him in hiding his assets from creditors like Plaintiff (doc. 15). In fact, Defendant conceded purchasing all of her husband's property including everything from the artwork and furniture in his four homes to the clothes off his back (doc. 9). The bills of sale for these purchases occurred at a time when Mr. Thompson had incurred over $5 million in debt to Plaintiff (doc. 31). Given these facts, there may have very well been some "mischief" accomplished or a "wrong" committed (in the form a fraudulent transfer).

Furthermore, the Court finds that Congress did not intend for the automatic stay provisions of the Bankruptcy Code to have such a far-reaching effect. The situation at hand is similar to that in Lynch v. Johns-Manville Sales Corp., 23 B.R. 750 (S.D. Ohio 1982), where the plaintiff brought a products liability action against multiple defendants. Id. at 751. Because one of the defendants filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, all proceedings against that defendant were stayed pursuant to 11 U.S.C. § 362(a). Id. This Court was then faced with the issue of determining whether the automatic stay provisions of the Bankruptcy Code extended to the solvent co-defendant. Id. The co-defendant argued that the proceeding against it should be stayed as well because the absent debtor was

a necessary party to the action. Id. After reviewing the language and legislative history of § 362(a), this Court held that § 362(a) did not extend that far. Id. at 752-753. As this Court stated,

> . . . The Bankruptcy Code is designed to facilitate the rehabilitation of debtors. Were we to find that the automatic stay of 11 U.S.C. § 362(a) extends to solvent co-defendants we would do nothing to further the goals of the Bankruptcy Code but would place unconscionable obstacles in the paths of plaintiffs. We do not accept that such a result was either intended by or is acceptable to Congress, and therefore, join those courts refusing to find that section 362(a) extends to solvent co-defendants of a Chapter 11 debtor.

Id. at 752.

Like the solvent co-defendant in Johns-Manville, Defendant in the instant case is attempting to use the Bankruptcy Code as a sword against her husband's creditor. Here, however, Mrs. Thompson cannot even claim the status of a co-defendant with her debtor husband. This is a single action against Mrs. Thompson. Her husband is merely a participant in the underlying act to which Plaintiff has "stated a claim." As discussed above, Plaintiff is stating the claim for the purposes of establishing an element of civil conspiracy rather than for the purposes of prosecuting the underlying act. To extend the automatic stay provisions of the Bankruptcy Code this far would place an unconscionable obstacle in the path of Plaintiff.

In summary, we agree with Plaintiff that Defendant's

7

motion is the latest in a stream of motions filed to avoid complying with discovery.  Because the discovery cut-off date is rapidly approaching, Defendant may face possible sanctions if she continues to fail to respond to discovery requests.  Furthermore, all discovery matters in the instant case will now be referred to Magistrate Judge Black.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Reconsideration or, Alternatively, to Certify Issue for Interlocutory Appeal or Immediate Review (doc. 32) is DENIED.  Defendant is hereby ORDERED to comply with discovery or face possible sanctions.  Furthermore, as Defendant's Motion to Extend Discovery Deadline is unopposed, the Court GRANTS said Motion (doc. 37).  The Discovery Cut-Off is hereby EXTENDED to April 1, 2006.  The Dispositive Motion Deadline is likewise EXTENDED to May 1, 2006.  Consequently, the May 5, 2006 Final Pre-Trial Conference and August 15, 2006 Trial are VACATED.  The Court will reschedule these two events in its order disposing of any filed dispositive motions.  If no Motions are filed, the Court will schedule these events sometime after the Dispositive Motion deadline has passed.

Aditionally, the Court SETS a Status Conference in this matter for January 31, 2006 at 2:00 P.M.

    SO ORDERED.

Dated: November 17, 2005      <u>s/S. Arthur Spiegel</u>

                                        S. Arthur Spiegel
                                        United States Senior District Judge