```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | NO. 1:04-CV-00815 |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| KATHARINE THOMPSON, | |
| Defendant. | |

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 74), Plaintiff's Memorandum in Opposition to Defendant's Motion (doc. 80), and Defendant's Reply Memorandum in Further Support of its Motion (doc. 81). Also before the Court are Plaintiff's Motion to Exclude Deposition Testimony of Rod Pasion and Piers Mackenzie from Defendant's Motion for Summary Judgment (doc. 77), Defendant's Memorandum in Opposition to Plaintiff's Motion (doc. 82), and Reply of Plaintiff in Support of their Motion (doc. 83). For the reasons stated herein, the Court DENIES Defendant's motion for summary judgment.

Furthermore, because the Court denies Defendant's motion for summary judgment irrespective of any testimony from Rod Pasion or Piers Mackenzie, the Court finds it unnecessary to rule on Plaintiff's motion to exclude Mr. Pasion and Mr. Mackenzie's

deposition testimony.

**I. Background**

The facts in this case, as taken from the parties' motions and pleadings, are fairly characterized as follows. The current action between Defendant Katharine Shaw Wallace Thompson and Plaintiff Great American Life Insurance Company arose from a judgment debt owed by Morley P. Thompson, Sr. ("Mr. Thompson") to Plaintiff (doc. 9). Mr. Thompson is a non-party to this suit and married to Defendant (Id.). In 2004, Plaintiff filed a multi-count complaint in Hamilton County Common Pleas Court asserting primary claims of fraudulent transfer and civil conspiracy against Defendant and Mr. Thompson (Id.). Plaintiff later began pursuing debt judgment against Mr. Thompson in the Northern District of California (Id.). After Plaintiff voluntarily dismissed its state court suit, Plaintiff filed this action pursuing a single claim against Defendant for civil conspiracy to commit fraudulent transfer (Id.).

Plaintiff asserts that Defendant conspired with her husband to hide his personal property and other property so that his creditors, including Plaintiff, could not seize it (doc. 80). The parties agree that Plaintiff's claim involves three distinct alleged conveyances: (1) Defendant's purchase of Mr. Thompson's personal property, (2) Mr. Thompson's conveyance of his interest in Defendant's Woodside home, and (3) Defendant and Mr. Thompson's

filing of joint tax returns after their 1999 marriage. The facts regarding these alleged conveyances are fairly described as follows.

### A. Bills of Sale

Defendant concedes that she purchased all of Mr. Thompson's personal property between 2001 and 2002 (doc. 9). These purchases are evidenced in three bills of sale executed by Mr. Thompson (doc. 80). A bill of sale dated May 16, 2001 purports to convey all of Mr. Thompson's personal property located at four residences in Cincinnati, California, Colorado, and Florida to Defendant, as well as four vehicles, including two Jaguars (Id.). This bill of sale conveyed the property in exchange for $300,000. The $300,000 was deposited into a Bank One account held by Thompson Associates (doc. 80).

A second bill of sale dated October 10, 2001 purported to convey all the paintings, prints, and photographs in all four of Mr. Thompson's residences to Defendant (doc. 74). In exchange, Defendant wrote a check for $92,445.03 to UBS for the purpose of paying Mr. Thompson's interest payment due to that company (Id.).

Finally, an October 1, 2002 bill of sale purports to convey all personal property located at Mr. Thompson's Cincinnati office to Thompson in exchange for $42,500 (Id.). This money was transferred by Defendant to Washington Mutual to make a payment on Defendant's $2.4 million dollar debt to that company (Id.).

Although Plaintiff did not file a lawsuit against Mr. Thompson until 2004, at the time of the bills of sale, Mr. Thompson had incurred over $5 Million in debt to Plaintiff (doc. 15).

### B. Interest in Woodside Residence

In 2001, Mr. Thompson arranged for Defendant to borrow $2.4 from Washington Mutual, secured by a mortgage on Defendant's home in Woodside, California (doc. 74). At the time the home was held in a trust, so a "grant deed"[1], containing Mr. Thompson's signature, was executed to put the title of the Woodside home in Defendant's name, allowing her to execute the mortgage (Id).

### C. Joint Tax Returns

Defendant and Mr. Thompson have filed joint tax returns since their marriage in 1999 (Id.) The tax returns reflect Defendant's income and Mr. Thompson's net operating loss ("NOL"), leaving the couple with no Adjusted Gross Income (Id.). In a financial plan submitted to the trustees of the Patricia Smith Thompson trust and filed in the Hamilton County Probate Court, Mr. Thompson stated that Defendant would pay him $220,000 per year for use of Mr. Thompson's tax benefit (doc. 80). Mr. Thompson has testified that he has never received such a payment from Defendant (Id.).

---

[1] Both parties characterize the deed in question as a "grant deed" (docs. 74, 80).

### D. Defendant's Motion for Summary Judgment

Defendant filed the present motion for summary judgment on August 1, 2006, stating that there is no dispute on any fact material to liability in this case (doc. 74). Defendant asserts multiple theories in support of her motion. Defendant claims that none of the transfers cited by Plaintiff were fraudulent, arguing: (1) the filing of the joint tax return was a legal action, and the conspiracy charge cannot be supported without an underlying illegal act (Id. citing, among others, Williams v. Aetna Finance Co., 83 Ohio St. 3d 464, 475 (1998)), (2) Mr. Thompson never had an interest in the Woodside residence, and therefore could not have fraudulently conveyed such interest to Defendant (Id.), and (3)the bills of sale could not constitute fraudulent transfer because they were given in exchange for reasonably adequate consideration (Id.).

Defendant further asserts that Plaintiff can prove no damages proximately caused by any of the alleged fraudulent transfer, and that Plaintiff can identify no damages which are different than those available exclusively to Mr. Thompson's bankruptcy trustee (Id.). Finally, Defendant contends that Plaintiff cannot establish actual malice essential to its claim for punitive damages and attorneys' fees (Id.).

## II. Applicable Legal Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees,

980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present

"significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at

587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**III. Analysis**

A careful review of the record on Defendant's motion reveals that there remain genuine issues of material fact which prevent the Court from granting summary judgment. The Court notes that any determination of liability in this case is necessarily fact intensive, and many of those facts are in dispute. It is not necessary to address each of Defendant's theories for summary judgment in detail, because the record is replete with factual determinations which preclude a grant of summary judgment.

A fundamental area of disputed fact is the value of the property transferred to Defendant by Mr. Thompson in the three bills of sale. The Court finds there is a dispute over the valuation of this property regardless of the accuracy of the assessment done by Piers Mackenzie. Defendant concedes that not all of the property transferred to Defendant was evaluated by Mr. Mackenzie (doc. 81). The Court cannot rely on Defendant's assertions that the value of the property that was not assessed by Mr. Mackenzie is negligible (Id.). Whether the property transferred through the bills of sale was of reasonably equivalent

value to the amount paid by Defendant is an issue central to the resolution of this case, and clearly still in dispute.

Similarly aiding the Court's finding is Defendant's reliance on her 2006 deposition testimony to support her motion for summary judgment. The Court cannot ignore the inconsistencies between Defendant's 2003 and 2006 depositions. For example, Defendant has given inconsistent statements regarding the disposition of the property transferred to her by Mr. Thompson (doc. 80). Defendant has also given contradictory statements about the nature of each of the bills of sale, varying on whether the payments from Defendant were to "purchase" Mr. Thompson's property, or were loans for which the property was meant to repay (Id.). Plaintiff points to these discrepancies in Defendant's various statements under oath (Id.) and cites Crocket v. Abraham for the proposition that "self-contradiction by the moving party's witnesses may of course create a genuine issue of material fact precluding summary judgment." 284 F.3d 131, 133 (D.C. Cir. 2002). The Court agrees with this statement, particularly in the instant case where Defendant asks the Court to rely on Defendant's testimony to conclude summary judgment is appropriate (doc. 80 (stating that the motion for summary judgment was based, in part, on the affidavit of Defendant and Defendant's 2006 deposition)). These contradictions call into question the veracity of Defendant's testimony, and clearly such credibility determinations are in the

-10-

province of a jury, and not the Court.

**IV. Conclusion**

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment (doc. 74). The Court's decision on the motion for summary judgment is made irrespective of any testimony from Rod Pasion or Piers Mackenzie, and therefore the Court finds it unnecessary to rule on Plaintiff's motion to exclude such testimony from the Court's consideration of this motion (doc. 77).

SO ORDERED.

Dated: October 24, 2006          s/S. Arthur Spiegel
                                 S. Arthur Spiegel
                                 United States Senior District Judge

K:\DOCUMENT\Sally\Substantive Orders\Great American v. Thompson, 04-815, Denying MSJ.wpd